E-FILED
Tuesday, 08 December, 2015  11:09:52 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-cr-30046 |
| | ) | |
| JAMAL SHEHADEH, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Jamal Shehadeh's request to dismiss the Indictment set forth in his Motion to Dismiss or, in the Alternative, Motion to Suppress (d/e 30) (Motion 30).  This Court bifurcated Motion 30 into a Motion to Dismiss and a Motion to Suppress, and determined to consider the Motion to Dismiss first.  Minute Entry entered August 20, 2015.

On September 9, 2015, the Court held an evidentiary hearing on the Motion to Dismiss.  The Government appeared by Assistant United States Attorneys Gregory Harris and Crystal Correa.  The Defendant appeared in person and with his attorney Assistant Federal Public Defender Douglas Quivey.  After the hearing, the parties submitted memoranda of law.  After careful consideration of the evidence presented, the applicable law, and the

arguments of counsel, this Court recommends that Defendant's

Shehadeh's Motion to Dismiss should be DENIED.

## STATEMENT OF FACTS

On February 28, 2014, Taylorville, Illinois, Police Detective Evert

Nation submitted a complaint for a search warrant to Illinois Circuit Judge

Bradley Paisley.  Upon review of the material presented, Judge Paisley

issued a warrant (Warrant) to search Shehadeh's residence located at

1009 East Main Cross Street, Taylorville, Illinois (Residence).  On February

28, 2014, at approximately 11:29 p.m., officers executed the Warrant.

Shehadeh and a woman named Kristina Lindsey were present at the

Residence.  Officers found a clandestine methamphetamine lab, precursor

materials used to manufacture methamphetamine, and a white powder on

coffee filters that tested positive for methamphetamine.

Upon finding the methamphetamine lab, the officers contacted Illinois

State Police (ISP) Special Agent Brian Hayes.  Hayes was contacted about

11:30 p.m. United States' Post Hearing Brief (d/e 45), Exhibit 1, Transcript

of Proceedings on September 9, 2015 (Tr.), at 70.  Hayes was assigned to

the ISP Methamphetamine Response Team.  He was certified to

investigate, abate, and dismantle clandestine methamphetamine

laboratories.  Hayes arrived on the scene at least an hour and a half after

the Warrant was executed.  Tr. 24.  He weighed the methamphetamine powder on the coffee filters and the liquid that was in a Gatorade bottle used as a "one-pot" methamphetamine lab (Gatorade Bottle).  Hayes used a sterile beaker to weigh the liquid in the Gatorade Bottle.  He also took samples of the powder and liquid for testing.  See Tr. 35, 76.

Hayes photographed all of the material found at the lab, including the Gatorade Bottle, a glass salsa jar (Glass Jar), a can of Liquid Lightning drain opener, a plastic bottle used as a hydrogen chlorine gas generator, peeled lithium battery casings, coffee filters, an empty bottle of lye, an empty Zippo lighter fluid bottle, the two coffee filters with the powdery substance, a camouflage bag, a coffee grinder, partial cold packs, red pipe cutter pliers, a used syringe, and CVS pharmacy cards used to purchase products containing pseudoephedrine.  See Government Exhibit 1, Photographs of Items found at Residence; Tr. 21-22, 75-85.

Hayes placed contaminated material into containers called buckets.  The contaminated materials included the Gatorade Bottle and the Glass Jar.  Pursuant to standard procedures, Hayes placed the Gatorade Bottle and the beaker used to weigh its contents into a single bucket, poured in vermiculite granules to fill the bucket, and then sealed the bucket.  Hayes followed the same procedure with the Glass Jar, placing it in a separate

bucket, filling the bucket with vermiculite, and sealing the bucket.  Tr. 36-37.  Hayes testified that the vermiculite stabilized any explosive or flammable materials in the contaminated items.  Tr. 88-89.  The buckets of contaminated materials were sent to ISP Methamphetamine Storage Container (Storage Container).  The Storage Container was an outside bunker used to store hazardous materials.  Tr. 52.  The representative samples of the methamphetamine powder and liquid were sent to ISP Statewide Evidence Vault.  Tr. 50-51.

Hayes testified that he never sent contaminated materials from a clandestine methamphetamine lab for fingerprint testing.  Tr. 37.  Hayes testified that if he found fingerprints on a contaminated item at a clandestine lab, he could ask for authorization to send it for fingerprint testing.  Tr. 40.  Hayes did not see anything that looked like latent fingerprints on the Gatorade Bottle or the Glass Jar.  Tr. 89.  He did not check for fingerprints.  He was not qualified to identify or recover fingerprints from surfaces and did not have the equipment to test for fingerprints or to lift fingerprints.  See Tr. 130-31.  The crime scene technicians qualified to test for fingerprints were not at the scene.  Crime scene technicians would not be allowed on the scene if they were not certified to work in contaminated clandestine methamphetamine labs.

Tr. 116-17.

Various ISP policies and procedures mentioned clandestine

laboratory materials.  The ISP Directive ENF-040, <u>Clandestine Drug

Laboratories</u>, provided, in part,

> Due to the explosive/flammable/corrosive dangers associated
> with transporting and/or handling, the clandestine laboratory
> materials outlined in Addendum 1 will **NOT** be submitted to an
> ISP forensic laboratory.

Government Collective Exhibit 6, <u>ENF-040, § IV.E.7, Hazardous Materials</u>,

at Bates Stamp 000119 (emphasis in the original).  The ISP Directive OPS

203, <u>Evidence – Inspection, Inventory, Retention, and Disposal</u>, stated, in

part,

> Evidence obtained during the course of an investigation will be
> retained at least until final adjudication of all litigation stemming
> from such investigations or until the investigation is otherwise
> closed.

Government Collective Exhibit 6, <u>OPS-203, § III.B.2.a., Retention periods,

Evidence</u>.  The Standard Operating Procedures for the Methamphetamine

Response Team stated,

> 1. Officers are encouraged to process fingerprints, i.e.,
>    photograph, lift, etc., if they are able to do so.
>
> 2. If an item does not contain a hazardous material and is not
>    otherwise contaminated, it may be submitted to the forensic
>    lab for analysis.  It is recommended the lab be contacted to
>    determine if an item will be accepted for analysis prior to
>    seizure (if possible) and submission.

Government Collective Exhibit 6, <u>Standard Operating Procedure,</u> <u>Evidence</u> <u>Collection</u>, II. G.1 and G.2, at Bates Stamp 000176.  <u>See</u> Tr. 38-39, 136-37.

The contaminated materials sent to the Storage Container were generally disposed of or destroyed by a qualified contractor pursuant to federal regulations.  <u>See</u> Tr. 93.  The ISP was authorized under federal Environmental Protection Agency (EPA) regulations to hold contaminated material temporarily until the material could be disposed of or destroyed. 40 C.F.R. § 261.5.

Officers arrested Shehadeh and Lindsey and transported them to the Taylorville Police station.  Hayes and Nation interviewed Lindsey at the Taylorville Police Station.  Lindsey told the officers that she bought pseudoephedrine pills that were used to manufacture methamphetamine in the clandestine lab at the Residence, but she did not participate directly in manufacturing methamphetamine.  She told Hayes and Nation that Shehadeh operated the lab to manufacture the methamphetamine.  Tr. 25-26, 47-48.

On March 3, 2014, Shehadeh was charged in Illinois Circuit Court in Christian County, Illinois, with Unlawful Participation in Methamphetamine Production.  <u>People v. Shehadeh</u>, Christian County, Illinois, Circuit Court Case No. 14-CF-34 (State Proceeding).  On the same day, March 3, 2014,

Shehadeh filed a pro se motion (Pro Se Motion) which included a request to preserve items seized during the execution of the Warrant.  The Pro Se Motion did not mention testing for fingerprints.  Government Exhibit 5, <u>Pro Se Motion</u>; <u>see</u> Tr. 148-51.

In early March 2014, Christian County State's Attorney Michael Havera contacted Hayes.  Havera told Hayes that a defendant recently filed a motion to preserve evidence found at a meth lab.  Havera asked Hayes if he knew of any case law that discussed the preservation of hazardous materials seized from a clandestine lab.  Hayes told Havera that federal regulations required the ISP to dispose of the contaminated materials as hazardous waste.   Tr. 55-57, 95-96, 151-52; Government Exhibit 2, <u>Email from Hayes to Lieutenant Mark Peyton and Master Sergeant Donald Payton dated March 10, 2014</u>.  Hayes stated that Havera did not mention testing for fingerprints.  Tr. 95.

On March 10, 2014, Hayes sent an email to ISP Master Sergeant Donald Payton in which Hayes forwarded Havera's request for case law. Payton was the Methamphetamine Statewide Coordinator for the ISP.  On the same day, March 10, 2014, Payton provided Hayes with citations to some Illinois cases and with some information on procedures for disposal of hazardous waste.  Payton told Hayes that the ISP could only hold

hazardous waste temporarily under federal regulations.  Hayes passed the

information on to Havera.  Government Exhibit 2, <u>March 10, 2014, Emails</u>

<u>between Hayes and Payton</u>; Tr. 60, 96-99, 128-30.

On March 20, 2014, the ISP received a letter from Shehadeh dated

March 16, 2014.  This letter stated in relevant part,

> [I] request that the items held in evidence by your office in the
> referenced case be fingerprinted prior to destruction.  As I'm
> certain you've known for quite some time, Ms. Lindsey is a
> habitual methamphetamine cook.  I had no part in the
> production, never have cooked or helped cook meth, was
> absent from my residence for most of the three hours prior to
> execution of the warrant, and my prints will be found nowhere
> on the items seized.

Defendant's Group Exhibit 7, <u>Excerpt of March 16, 2014 Letter</u>.  Hayes

received a copy of the March 16 Letter.  He had it in his files.  Tr. 27.

Hayes testified that he had read this Letter.  Tr. 102-03.

On March 25, 2014, the Illinois Court held a hearing on the State

Proceeding.  Shehadeh's counsel made an oral motion to have the

Gatorade Bottle and the Glass Jar fingerprinted.  The Court , Havera, and

Shehadeh's counsel Mr. Swiney had the following colloquy regarding the

oral motion:

> Mr. Swiney:      Judge, . . . .  There is . . . something we
> need to tie up . . . .  It is my understanding that the State was
> seeking to destroy some of the evidence that was collected in
> this case.  I'm curious as to where they are with that.

Mr. Havera:        And I think the Court remembers, Judge, we had addressed that with – the defendant filed a motion asking for, and not sure, it was all evidence to be preserved.  We had the issue where the Meth Response Team is regulated by federal government rules which doesn't allow them to hold waste of that nature past a certain date.  We set today's date to determine whether or not the Court was going to make them, or I don't even know if the Court has the power to make them hold such –

The Court:        I don't think I have the authority to make them violate federal law. . . . .

. . . .

Mr. Swiney:        Yes, Judge. I understand the law.  My only request would be that if that waste to be destroyed is inside any type of container that was removed from the residence as a result of a search, that if that container is going to be preserved, uh, if it is not, I would request that any fingerprints on it be lifted.

Mr. Havera:        I don't have any problems with that, Judge.  I will ask them to fingerprint any, any original jars. . . .  I can check with them and see and make sure that anything is printed if it is originally coming form that residence.

Mr. Swiney:        Yes.  The same would go for any item that is removed.  I would ask that any item removed as a result of the search be fingerprinted.

The Court:        Well, let's figure out what we are talking about here in terms of what was removed.  I mean, I don't want to obligate them to hold something that is a hazardous waste if – I'm not sure what they took.  I remembered looking at the Return.  Is the Return –  It is probably in here.  So it says there was a Gatorade bottle containing a one-pot meth lab.  That is something you want the container itself preserved?  Right?

Mr. Swiney:        Yes.

The Court:        I assume that is not something that would be destroyed.  That officer is here that participated in that.  I don't know if he knows the answer to that.

. . . .

Mr. Havera:        Brian Hays is the individual from the Meth Response Team that dismantled the lab.  He would know what typically as far as policy is destroyed and not destroyed.

The Court:        The other items that are on the list, it says, representative sample that was taken from the Gatorade container.  That is not something you would fingerprint.  Glass jar containing liquid.  That is something you will want fingerprinted.

Mr. Havera:        Absolutely.

. . . .

Mr. Swiney:        And that would be my request, Judge, anything that was methamphetamine related, any container, any type of apparatus be fingerprinted.

The Court:        So let me get—Just to make sure we are clear.  So you want the Gatorade bottle and the glass jar . . .?

. . . .

The Court:        So the Gatorade bottle and the glass jar that were seized from the residence of the defendant are ordered to be preserved until they are fingerprinted.  So you will need to make sure that happens.

Mr. Havera:        Yes, sir.

Defendant's Exhibit 9, <u>Transcript of Hearing on March 25, 2014, in State Proceeding</u>, at 7-12.

The minute entry for the March 25, 2014, hearing in the State Proceedings stated, in part, "On oral motion of Defendant, Gatorade bottle and glass jar is order (sic) to be preserved until fingerprints taken from those items."  Defendant's Exhibit 1, <u>State Proceeding Docket</u>, at 3.

In March 2014, Assistant United States Attorney Bryan Freres spoke to Hayes about Shehadeh.  Freres stated that his discussions with Hayes "were generic factual overviews of Mr. Shehadeh's activities in Taylorville." Freres stated, "I did not review the file and took no action at that time." Government Exhibit 9, <u>Affidavit of Brian Freres (Freres Affidavit)</u>, ¶ 3.[1] Hayes and Havera both recalled meeting with Freres.  Havera recalled meeting in the spring of 2014.  Tr. 175.  Hayes did not recall when the meeting occurred.  Tr. 69.  Havera recalled that no decision was made about whether the federal government would prosecute Shehadeh federally.  Tr. 175.  Hayes did not recall any of the substance of the meeting.

---

[1] The Freres Affidavit is undated, and Freres did not declare under penalty of perjury that the statement was true and correct and did not appear before a notary or other officer authorized to administer oaths and swear or affirm that the statements were true and correct.  <u>See</u> 28 U.S.C. § 1746.  Defendant Shehadeh did not object to the admission of the Freres Affidavit into evidence.  The Court will, therefore, consider the Freres Affidavit to be true and correct.

On or about April 21, 2014, Payton spoke to Havera.  Payton told Havera that the ISP could not hold hazardous waste from a clandestine methamphetamine lab.  Tr. 130, 155.  On April 21, 2014, Payton sent an email to Hayes.  Payton told Hayes he spoke to Havera about the hazardous waste taken from the Residence.  Payton told Hayes, "[Havera] believes the only order he has on the Shehadeh case is an order for the retention of the representative sample so it can be tested by an independent expert.  He is checking the court transcript to confirm."  Defendant's Exhibit 4, Email from Payton to Hayes dated April 21, 2014.

Hayes subsequently contacted Havera.  Tr. 103-04.  Havera testified that he checked his handwritten notes on the back of his file folder.  The file folder had three columns of blank lines preprinted onto the folder for writing information and notes.  Havera kept notes on these lines on the back of the file folders.  Havera wrote on the bottom line in the center column of his file folder on the State Proceeding, "4/1/14 parole review. Denied motion for".  Havera wrote immediately below the center column in the bottom margin, "Gatorade bottle and glass Jar need printed before destroyed."  Government Exhibit 10, Notes from Havera File Folder for Case No. 14-CF-34 Jamal Shehadeh.  Havera interpreted these lines in his handwritten notes to mean, "4/1/14 preliminary.  Denied motion for Gatorade bottle and

glass Jar need printed before destroyed."  Havera testified, "And then I

have [in my notes] denied motion for Gatorade bottle and glass jar need

printed before destroyed."  Tr. 159.  Based on this interpretation, Havera

testified that he incorrectly concluded that the Judge had denied the oral

motion to preserve the Gatorade Bottle and Glass Jar.  Havera testified:

> [W]hat I had recalled from my memory was that if there were
> federal guidelines, then the state court, I guess wasn't sure,
> didn't they had the authority to tell them to override a federal
> guideline, which was what I was recalling.
>
> So I reviewed the file that there was an entry on my file
> that said something to the effect of motion for preserving and
> for fingerprinting denied.
>
> So based on having spoken to Mr. Peyton (sic)  and
> confirming those federal guidelines regarding that disposal, and
> my memory and the file entry, I went ahead and told [Hayes]
> they could dispose of it.

Tr. 156-57; see Tr. 163-64.  Havera told Hayes to go ahead with his

standard procedures.  Tr. 63, 104, 157-61.  Havera testified that he did not

purposefully try to deprive Shehadeh of any evidence that might be

favorable to his defense.  Tr. 162.  Havera also testified that he relied on

Hayes and Payton's representations about federal guidelines for hazardous

waste disposal and did not do any independent research.  Tr. 180.

On April 29, 2014, the ISP Freedom of Information Officer Lieutenant

Steve Lyddon contacted Methamphetamine Response Team Master

Sergeant Eric Hall about a Freedom of Information Act (FOIA) request from Shehadeh.  Hall told Lyddon, in part, "Also. . . .  we are working to get this case into the Federal System and don't really want him to see any thing (sic) in the case which may reflect us gearing up for Federal charges." Defendant's Exhibit 5, Emails to and from Hall and Lyddon dated April 29, 2014.

On May 1, 2014, a contractor took possession of the Gatorade Bottle and Glass Jar for disposal pursuant to EPA regulations.  See Tr. 93-94, 107-08.  The Gatorade Bottle and Glass Jar were never tested for fingerprints.  Tr. 166.

In mid-August 2014, Havera sent materials regarding this case to Assistant United States Attorney Freres.  Freres reviewed the file and determined that the case met his office's criteria for federal prosecution.  In early September 2014, Freres notified Havera that he would take the case. Freres stated in his affidavit, "During my review of the case reports I assumed the physical evidence had been properly preserved, and I never reviewed the actual physical evidence."  Freres Affidavit, ¶ 4.

On September 22, 2014, Shehadeh's defense counsel filed a motion in the State Proceedings called Omnibus Pretrial Motions (Omnibus Motion).  Defendant's Exhibit 2, Omnibus Motion.  The Omnibus Motion

asked for several types of relief, including dismissal because the Gatorade Bottle and Glass Jar were destroyed before they were fingerprinted. Omnibus Motion, at 10-15.

On October 7, 2014, a federal grand jury indicted Shehadeh for Aiding and Abetting Others in the Manufacture of Methamphetamine (Count I); Aiding and Abetting Others in the Possession of Pseudoephedrine with the Intent to Manufacture Methamphetamine (Count II); and Maintaining a Building [the Residence] for the Purpose of Manufacturing Methamphetamine (Count III). Indictment (d/e 1).

On December 1, 2014, States Attorney Havera filed a Motion to Nolle Prosequi in the State Proceeding.  The Omnibus Motion was set for hearing on December 1, 2014, but was not ruled on due to the Nolle Prosequi motion.  The Nolle Prosequi motion was allowed and the State Proceeding was dismissed.  Tr. 173.  Havera testified that he never spoke to Freres about the Omnibus Motion.  Tr. 179.

Freres stated in his affidavit that he did not have any involvement in the State Proceedings, "At all times before and after this case was charged, I had no involvement in the underlying state proceedings.  I was neither aware of, nor involved in the preservation or destruction of evidence by state authorities, either before or after this case was charged in federal

court." <u>Freres Affidavit</u>, ¶ 5.  Havera also testified that the federal government had no involvement in the State Proceedings.  Tr. 179.

The Government also presented the testimony of a fingerprint expert, Gary Havey, at the evidentiary hearing.   Havey testified that he was a forensic scientist specializing in latent fingerprints, palm prints, and footprints.  He was employed by the ISP.  He had over 29 years' experience.  Tr. 182.  He testified that he reviewed the records of the drug cases he worked in 2013 and 2014.  In 2013, 63 percent of the cases had no prints suitable for comparison.  In 2014, 66 percent of the cases had no prints suitable for comparison.  He testified that 40 to 45 percent of the cases had no prints suitable for comparison.  Tr. 188-89.  Havey further opined that pouring vermiculite over an item to cover it would remove any recoverable prints.  Tr. 190-91.

<u>ANALYSIS</u>

Shehadeh asks this Court to dismiss the Indictment because the ISP destroyed the Gatorade Bottle and Glass Jar before they were checked for fingerprints.  Shehadeh claims that his fingerprints would not have been found on these items and that the lack of fingerprints would have been material and exculpatory.

Criminal prosecutions must comport with constitutional due process principles of fundamental fairness.  In circumstances in which material was not preserved which could have been subjected to testing, and the testing might have exonerated the defendant, dismissal is appropriate if: (1) the evidence possessed exculpatory value that was apparent before the evidence was destroyed; (2) the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the Government acted in bad faith.  United States v. Aldaco, 201 F.3d 979, 983 (7th Cir. 2000) (quoting United States v. Watts, 29 F.3d 287, 289-90 (7th Cir. 1994);  Illinois v. Fisher, 540 U.S. 544, 549 (2004); Arizona v. Youngblood, 488 U.S. 51, 57 (1988); see California v. Trombetta, 467 U.S. 479, 489 (1984).  Furthermore, in prosecutions brought by the federal government based upon a state law enforcement investigation, a defendant must show that federal officers, rather than state officers, acted in bad faith.  Aldaco, 201 F.3d at 983-84; see United States v. Doty, 714 F.2d 761, 764 (8th Cir. 1983).  The defendant has the burden of proof.  Youngblood, 488 U.S. at 58 ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); accord Fisher, 540 U.S. at 545.  The Supreme Court in Illinois v. Fisher noted the distinction between

suppression or failure to disclose material exculpatory evidence and the failure to preserve potentially useful evidentiary material for which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant.  The Court specifically concluded that failure to preserve this "potentially useful evidence" does not violate due process unless the criminal defendant can show bad faith.  Fisher, 540 U.S. at 547-548.

The Gatorade bottle and Glass Jar are, at best, potentially useful evidentiary material of which no more can be said other than they could have been subjected to fingerprinting, the results of which might have been beneficial to Shehadeh.  Shehadeh has shown that he wanted these items tested and that he claimed his fingerprints would not be found on either item.  The testing may or may not have yielded the results which Shehadeh anticipated.

Based on the evidence presented at the hearing, the likelihood of finding recoverable fingerprints on the Gatorade Bottle or Glass Jar was remote.  Havey testified that the vermiculite used to stabilize the contamination on those items would have removed any fingerprints.  Thus, testing the Gatorade Bottle and Glass Jar for fingerprints was likely not to show anything.

Shehadeh also has not shown bad faith.  Bad faith in this context means a conscious effort to suppress exculpatory evidence.  United States v. Fletcher, 634 F.3d 395, 408 (7th Cir. 2011).  Carelessness or negligence is not bad faith.  Id.; Hubanks v. Frank, 392 F.3d 926, 930 (7th Cir. 2004).  Shehadeh has, at best, shown that Havera made a mistake in the interpretation of his notes about the March 25 hearing.  Havera recalled the Judge said he could not order the ISP to violate federal regulations, and Havera erroneously understood his notes to say that the oral motion to preserve evidence had been denied.  Havera correctly remembered that the Judge commented that he could not order the ISP to violate federal law.  See Transcript of Hearing on March 25, 2014, in State Proceeding, at 7-12.  The Court finds that Havera's explanation shows that he made an error in relying on his file notes instead of checking the Court's docket entry; but does not show that he consciously sought to suppress exculpatory evidence.   Shehadeh further does not show any improper actions by the ISP.  The ISP held the Gatorade Bottle and Glass Jar until Havera told them to proceed with disposal according to EPA guidelines.  Shehadeh has not shown evidence of bad faith.

Shehadeh also has no proof of any improper conduct by any federal official.  Freres was aware of this case in March 2014, but Shehadeh

presents no evidence that Freres had any knowledge about anything related to the preservation or destruction of the Gatorade Bottle and Glass Jar.  Freres did not receive the file until August 2014, long after the items were disposed of or destroyed.  Shehadeh presents no evidence linking Freres or any other federal officer to any involvement in the disposal of these objects without testing for fingerprints.  Shehadeh, therefore, has failed to demonstrate a violation of due process.  Aldaco, 201 F.3d at 983-84.

Shehadeh urges the Court to apply a list of factors set forth in United States v. Beckstead, 500 F.3d 1154 (10th Cir. 2007), to determine bad faith. The Seventh Circuit has not adopted the factors listed in the Tenth Circuit's Beckstead decision.  Rather, the Seventh Circuit has stated that bad faith is a conscious effort to suppress evidence.  Fletcher, 634 F.3d at 408.  The Court must follow the Seventh Circuit.  Shehadeh has failed to show bad faith.

The Court also notes that the Beckstead case involved dismantling of a methamphetamine lab.  The police in Beckstead "seized and immediately disposed of the methamphetamine lab pursuant to standard police department policy."  Beckstead, 500 F.3d at 1156.  The Tenth Circuit denied Beckstead's claim that this destruction violated due process.

Similarly here, the Gatorade Bottle and Glass Jar were disposed of
pursuant to standard policies and EPA regulations.

Shehadeh cites several cases from other Circuits in which courts
dismissed cases for bad faith destruction of potentially useful evidence.
Those cases are distinguishable.  In United States v. Cooper, 983 F.2d 928
(9th Cir. 1993), the government did not challenge the finding of bad faith,
but rather challenged whether the defendants could have secured
comparable evidence.  Here, bad faith is at issue and Shehadeh has not
shown bad faith.

In United States v. Bohl, 25 F.3d 904, 913 (10th Cir. 1994), the
defendants repeatedly asked the government to preserve for testing steel
used to build towers for the Federal Aviation Administration.  The
government destroyed the steel before the defendants had an opportunity
to test it.  The government presented no explanation for this action.  Bohl,
25 F.3d at 913.   Here, the government has presented an explanation that
shows a lack of bad faith.  Also unlike Bohl, Shehadeh has failed to show
any federal involvement.

In United States v. Montgomery, 676 F.Supp.2d 1218, 1240 (D. Kan.
2009), the government destroyed marijuana plants without photographing
them to establish the number of plants grown.  Montgomery was charged

and convicted with growing more than 100 plants.  The Court granted

Montgomery's § 2255 habeas motion because his attorney should have

moved to dismiss because the government failed either to preserve or

properly photograph the plants to show the number of plants in accordance

with Drug Enforcement Agency (DEA) policy.  Id. at 1244-45.  Here, Hayes

followed policy by preserving representative samples and properly

photographing the materials used in the clandestine lab including the

Gatorade Bottle and the Glass Jar.  The Montgomery case does not apply.

In addition, Montgomery involved the actions of federal DEA agents.

Shehadeh has no proof of any federal involvement in the destruction of the

Gatorade Bottle and the Glass Jar.

Shehadeh argues that Hayes acted in bad faith by violating Illinois

law and ISP policies and procedures.  Shehadeh cites 725 ILCS 5/108-10

and 5/108-11.  Section 5/108-11states that a Court receiving a return of a

warrant in which items are seized, "shall enter an order providing for their

custody pending further proceedings."  Shehadeh also cites ISP Directive

OPS 203, quoted above.  Directive OPS 203 states that evidence shall be

retained until a case becomes final.   Shehadeh argues that Hayes acted in

bad faith because he violated this statute and policy directive when he

allowed the Gatorade Bottle and Glass Jar to be destroyed.

Hayes testified that he preserved the evidence by weighing the powder and liquid, retaining representative samples, and photographing the other materials found as evidence.  Hayes testified that the Gatorade Bottle and Glass Jar were hazardous waste from the clandestine lab.  Tr. 120-21; see Tr. 140-45, 178.  Federal regulations required the ISP to dispose of hazardous waste.  The ISP officials, including Hayes, reasonably interpreted the various policies, rules, and procedures in treating the Gatorade Bottle and Glass Jar as hazardous waste rather than evidence.  Shehadeh does not demonstrate any violation of any statute, policy, or procedure, let alone any bad faith.

Shehadeh argues that this case should be governed by Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).  Shehadeh is incorrect .  Brady and Giglio concern withholding exculpatory evidence, including evidence that could be used for impeachment. This case does not involve exculpatory evidence.  Rather, this case involves the destruction of material which could have been tested for possible exonerating test results.  This case is governed by Youngblood and Fisher.  Youngblood, 488 U.S. at 57-58.  Brady and Giglio do not apply.

Shehadeh argues that this Court should apply Justice Stevens'

concurrences in <u>Youngblood</u> and <u>Fisher</u>.  Justice Stevens stated:

> In my opinion, there may well be cases in which the defendant
> is unable to prove that the State acted in bad faith but in which
> the loss or destruction of evidence is nonetheless so critical to
> the defense as to make a criminal trial fundamentally unfair.

<u>Youngblood</u>, 488 U.S. at 61 (Stevens, J., concurring); <u>accord</u> <u>Fisher</u>, 540

U.S. at 549 (Stevens, J. concurring).  Justice Stevens' concurrences are

not the law.[2]  The majority opinions in <u>Youngblood</u> and <u>Fisher</u> both require

proof of bad faith.  Shehadeh has not shown bad faith.  Moreover, Justice

Stevens would find a due process violation "if the loss or destruction of

evidence is nonetheless so critical to the defense as to make a criminal trial

fundamentally unfair."  Shehadeh has made no such showing that his trial

will now be fundamentally unfair.  The fingerprint evidence would not

change the other evidence that tends to show that Shehadeh, at a

minimum, allowed a methamphetamine lab to operate in his Residence.

<u>See</u> <u>Youngblood</u>, 488 U.S. at 61; <u>Fisher</u>, 540 U.S. at 549.

---

[2] Shehadeh cites <u>Jones v. McCaughtry</u>, 965 F.2d 473, 480 n. 4 (7th Cir. 1992) for the proposition that the
Seventh Circuit recognized the exception to the bad faith requirement in Justice Stevens' concurrence.
The Seventh Circuit acknowledged Justice Stevens' concurrence in a footnote, but followed the majority
opinion in <u>Youngblood</u> that required proof of bad faith.  <u>Jones</u>, 965 F.2d at 480.  The Seventh Circuit did
not follow Justice Stevens' concurrence.

## DEFENDANT SHEHADEH'S SUPPLEMENTAL EVIDENCE

Defendant Shehadeh presented ISP investigative reports; an ISP Forensic Laboratory Report; and related receipts and transmittal documents (Supplemental Reports) from an unrelated matter after the evidentiary hearing and after briefing was completed on the Motion. Sealed Documents (d/e 50, 53). The Supplemental Reports concern a search and seizure of evidence from a methamphetamine manufacturing lab that occurred in 2015 more than one hundred miles from Taylorville, Illinois. The incident involved the search of an automobile and a residence. The case agent wrote one of the Supplemental Reports. The case agent's report stated that some plastic and glass bottles used in the manufacture of methamphetamine were seized at the scene and sent to the ISP crime lab for analysis and fingerprint testing.

An ISP Methamphetamine Response Team member wrote the second of the Supplemental Reports. This officer stated that some plastic bottles and glass jars were turned over to the case agent at the scene for evidentiary purposes. The items included a plastic bottle that contained liquid methamphetamine, a 12 once HEET bottle, and two glass jars that smelled of a chemical odor. The plastic bottles and glass jars were empty when they were turned over to the case agent. The ISP Methamphetamine

Response Team member stated that he photographed items, disposed of certain hazardous materials at the scene and sent other items to the Storage Container for destruction pursuant to DEA guidelines.

The Lab Report in the Supplemental Reports indicates that three plastic bottles and two glass jars were received and tested for fingerprints. Two plastic bottles and one glass jar revealed useable latent fingerprints, but one glass jar and one plastic bottle tested did not reveal any useable fingerprints.

Shehadeh cites this evidence to impeach the testimony of Hayes and Payton regarding fingerprinting procedures of contaminated items found at a methamphetamine lab crime scene.

The Supplemental Reports do not change the outcome in this case. The evidence does not impeach Hayes or Payton.  Hayes testified he never sent contaminated items from methamphetamine labs to the ISP crime lab for fingerprint testing.   Tr. 36-37.  Hayes was not involved the events that are the subject of the Supplemental Reports.  The Supplemental Reports do not contradict his testimony about his experience.  Payton testified that the relevant ISP Standard Operating Procedure stated that items at a methamphetamine crime scene should be sent to the ISP crime lab for fingerprint testing unless the items were contaminated.  Payton further

stated that contaminated bottles should not be sent to the ISP crime lab for fingerprint testing. Tr. 135-36.  Payton's testimony is consistent with the Standard Operating Procedure quoted above.  Standard Operating Procedure, Evidence Collection, II. G.1 and G.2.  The fact that the officers who wrote the Supplemental Reports did not follow the Standard Operating Procedure does not contradict the accuracy of Payton's testimony.

More importantly, the supplemental evidence does not tend to prove the elements that Shehadeh must show under Fisher and Youngblood. The Supplemental Reports do not tend to show that the Gatorade Bottle and Glass Jar had exculpatory value.  The Supplemental Reports concerned a completely different situation.  The Supplemental Reports do not tend to show anything about the Gatorade Bottle and Glass Jar, including whether the objects had any exculpatory value.

The Supplemental Reports also do not tend to show bad faith. Shehadeh must show that the officers engaged in a conscious effort to suppress evidence.  Fletcher, 634 F.3d at 408.   The Supplemental Reports show that the authors of those reports and Hayes acted similarly.  The Supplemental Reports show that the officers photographed items, preserved some items as evidence, destroyed some items on the spot, and sent some items to the Storage Container for disposal.  On February 28,

2014, Hayes photographed items, took samples to be preserved as evidence, destroyed some items on the spot, and sent some items to the Storage Container.  The fact that the officers differed in the treatment of some bottles does not tend to show that Hayes consciously sought to suppress evidence.  This is particularly true because Hayes' actions were consistent with the written ISP Standard Operating Procedures.

Finally, Shehadeh must show that a federal official acted in bad faith. Aldaco, 201 F.3d at 983-84; see Doty, 714 F.2d at 764.  The Supplemental Reports provide no information relevant to the actions of any federal official.  The Supplemental Reports do not affect the outcome of the Motion to Dismiss.  Shehadeh fails to meet his burden under Youngblood and Fisher.

THEREFORE, IT IS RECOMMENDED that Defendant Jamal Shehadeh's Motion to Dismiss or, in the Alternative, Motion to Suppress (d/e 30) should be DENIED in part.  The request to dismiss the Indictment should be DENIED.  The Motion to Suppress portion of Motion 30 remains pending before this Court at this time.  The Sealed Documents (d/e 50, 53) shall remain sealed.  The documents concern a different criminal matter that may still be active and unresolved.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); 28 U.S.C. § 636(b)(1).

ENTER:  December 8, 2015

_____*s/ Tom Schanzle-Haskins*_____
UNITED STATES MAGISTRATE JUDGE