IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-cr-30046 |
| ) | |
| JAMAL SHEHADEH, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Jamal Shehadeh's request to suppress all evidence seized pursuant to a February 28, 2014, search warrant (Warrant), as set forth in his Motion to Dismiss or, in the Alternative, Motion to Suppress (d/e 30) (Motion 30). This Court bifurcated Motion 30 into a Motion to Dismiss and a Motion to Suppress. Minute Entry entered August 20, 2015. The request to dismiss this case has been denied. Opinion entered February 3, 2016 (d/e 59) (adopting Report and Recommendation entered December 8 2015 (d/e 54)). For the reasons set forth below, the Motion to Suppress should be DENIED.

## STATEMENT OF FACTS

On February 28, 2014, at 11:06 p.m., Taylorville, Illinois, Police Detective Evert Nation presented a Complaint for Search Warrant (Complaint) and Affidavit to the Honorable Bradley Paisley, Associate Circuit Judge of the of Fourth Judicial Circuit of Illinois in Christian County, Illinois. Judge Paisley had been the Christian County, Illinois, State's Attorney before he became a judge. The Complaint sought a search warrant to search Shehadeh's residence located at 1009 East Main Cross in Taylorville, Illinois (Residence).

Nation stated in the Affidavit that he had fifteen years' experience as a police officer which included experience investigating felony drug offenses. His experience in drug investigations included fourteen months as an Inspector with the Illinois State Police Central Illinois Enforcement Group (CIEG). Nation further stated the following on the Affidavit:

(1) On February 28th, 2014 at approximately 9:20 p.m. Christian County Crime Stoppers received a call in reference to a "Meth Lab" at 1009 East Main Cross St., Taylorville. The caller indicated that there is a strong chemical odor coming from the house.

(2) 1009 East Main Cross St., Taylorville is the residence of Jamal S. Shehadeh.

(3) On February 28th, 2014, I went to the area of 1009 East Main Cross. I put myself downwind of the residence on the adjacent property. As I stood behind the residence, I

>    detected a strong chemical odor which I recognized as an odor related to Methamphetamine production.
>
> (4) At approximately 10:25 p.m., the crime stoppers caller called back and said that Jamal Shehadeh and Kristina Lindsey are the individuals that are "cooking dope" at the house.
>
> (5) I checked Nplex, the pseudoephedrine pill log system. Kristine Lindsey purchased a box of pseudoephedrine pills on February 22nd, 2014. Kristina Lindsey has purchased pseudoephedrine three times in 2014 and a total of 18 times in 2013. I checked Nplex for Jamal Shehadeh. Shehadeh purchased pills back on February, 07, 2014.

Affidavit.

The Christian County Crime Stopper records listed receipt of a call on February 28, 2014, related to "Drug Activity." The Crime Stoppers summary of the call stated, in part,

> Caller stated that at a residence on East Main Cross Street there is a white Cadillac sitting in front. Caller said that there is a smell of ether and ammonia coming from the residence and a male subject has been going in and out of the residence.
>
> Caller stated that a Tina Lindsey and a Jamal live there.

Motion, Exhibit Q, Christian County Crime Stoppers Call Report.[1]

Nation omitted from the Affidavit the fact that he had received information about Shehadeh from Illinois State Police Inspector Jeffrey Brown. Brown told Nation information that Brown received from a CS. The

---

[1] Shehadeh notes that in 2003 Nation received a verbal reprimand for posting a fictitious story of a "Crime of the Year 2003" on Crime Stoppers letterhead  Motion, Exhibit R, Letter of Reprimand dated December 5, 2003.

CS sent a text message to Brown stating that the CS thought that Lindsey and Shehadeh were "cooking dope at SHEHADEH'S residence." Motion, Exhibit P, Illinois State Police Investigative Report. The CS further stated that "you could smell methamphetamine being manufactured outside the house." The CS stated that he was going to call Crime Stoppers. The CS "also stated the CS had seen LINDSEY and SHEHADEH manufacturing the methamphetamine it was 100 percent they were manufacturing methamphetamine." Id.

    Based on the Affidavit, Nation requested a warrant to search the Residence for the following:

> (3)    That the following things are to be seized:
>
> > Any and all cannabis, methamphetamine, and/or controlled substances, paraphernalia used in the packaging, processing and manufacturing of cannabis, methamphetamine, and/or controlled substances including but not limited to a triple beam scales, hand scales, plastic bags, ties, razor blades, as well as any and all documents relating to the sale or distribution of cannabis, methamphetamine, and/or controlled substances, documents indicating residency, cellular telephones, pagers, computers, safes, surveillance equipment, any US currency, firearms and the property described herein, when found, shall be inventoried and a return of all instruments, articles or things seized shall be made without unnecessary delay.

Complaint, ¶ 3.

Judge Paisley had some experience with Shehadeh before he reviewed the Complaint and Affidavit.  In 2012 and 2013, Judge Paisley recused himself in eight civil cases filed by Shehadeh in state court.  Judge Paisley recused himself in seven cases in 2012 and in one case in 2013.  <u>Motion 30</u>, Exhibit L, <u>Docket Sheets from Circuit Court of Christian County, Illinois</u>.  Three of the cases sought writs of mandamus, one sought injunctive relief, two sought relief under the Illinois Freedom of Information Act (FOIA), and the relief sought in two of the cases is unclear from the docket.  Shehadeh submitted docket sheets from four additional cases that he filed after February 28, 2014, from which Judge Paisley recused himself.

Nation also had some experience with Shehadeh prior to February 28, 2014.  Shehadeh attached to the Motion an undated letter from Nation to Shehadeh.  <u>Motion</u>, Exhibit O, <u>Letter from Nation to Shehadeh (Letter)</u>.  Nation wrote the Letter in response to a letter Shehadeh wrote to Nation while Shehadeh was incarcerated with the Illinois Department of Corrections.  Nation accepted Shehadeh's apology.  Nation wrote that he was glad that in a past encounter Shehadeh dropped a hammer when Nation ordered him to do so.  Nation wrote that he would have used deadly force if Shehadeh had come at him with the hammer.  Nation also wrote:

> Life is too short to hold grudges.  If I held a grudge against everyone that I had to deal with, my life would have been cut

short years ago from a heart attack.  I have no problems with you nor do I plan on having any problems with you.  Once you had paid your debt and return to our community, I will treat you as any other citizen.  If we happen to meet again, on the job, I will treat you the same as I would anyone else.

It is sad that the outcome of your past had landed you in the department of corrections.  D.O.C. is designed to punish as well as make people better for society.  I hope that while you are there, you have the opprotunity (sic) to make yourself a better person.  We all know, you are not a stupid person.  You are probably one of the smartest people around here.  I would like to see you use your brains and do something constructive for the community as appose (sic) to waisting (sic) them on drugs and alcohol.

Letter.

Shehadeh also had a history of threatening judges and public officials.   Shehadeh had a prior federal felony conviction for making a threatening communication and a prior state felony conviction for threatening a public official.  The Federal Bureau of Investigation (FBI) investigated Shehadeh in 2004 for threatening a U.S. Magistrate Judge and an Assistant United States Attorney.  Motion, Exhibit M, FBI Memorandum dated February 27, 2004.  According to an FBI investigation report, dated January 9, 2015, Shehadeh had a "history of . . . filing lawsuits and FOIA requests; making threats to law enforcement and judges, and taking the role of a sovereign citizen, among other things."  Motion, Exhibit N, FBI Investigation Report.

Upon review of the Complaint and Affidavit, Judge Paisley issued the Warrant. Nation and other officers executed the Warrant and searched the Residence. Officers found evidence of a methamphetamine lab in the Residence. Shehadeh was present at the time of the search. Officers arrested Shehadeh at the time. On March 3, 2014, Shehadeh was charged in state court. Motion 30, Exhibit C, Docket Sheet, People v. Shehadeh, Christian County, Illinois, Circuit Court No. 14-CF-34 (State Criminal Proceeding).

On July 10, 2014, Judge Paisley recused himself from the State Criminal Proceeding with the following docket entry, "Based upon repeated improper ex parte communications received by this Court from the Defendant in the form of letters received, including the most recent letter received dated 07/07/2014, Judge Paisley recuses himself from this case." Motion 30, Exhibit C, State Criminal Proceeding Docket Sheet.

On October 7, 2014, a federal grand jury indicted Shehadeh on charges of aiding and abetting in the manufacture of methamphetamine, possession of pseudoephedrine with the intent to manufacture methamphetamine, and use or maintenance of a building for the purpose of manufacturing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(c)(1), and 856(a)(1). Indictment (d/e 1). On December

2, 2014, the State Court Proceeding ended when the state court allowed the prosecution's motion to <u>nolle</u> <u>prosequi</u>.  <u>State Court Proceeding Docket Sheet</u>.

## ANALYSIS

Shehadeh moves to suppress the evidence on the grounds that Judge Paisley was not a neutral and detached magistrate and because Nation knowingly and intentionally made material false statements on the Affidavit.   Shehadeh has failed to support either claim.

 A warrant must be issued by a neutral and detached magistrate. U.S. Const. Amendment IV; <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 449 (1971).  The Supreme Court has found that a magistrate was not neutral and detached in circumstances in which the magistrate had a pecuniary interest in the outcome of the decision or had wholly abandoned his judicial role.  See <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 323-25 (1979) (a town justice actively participated in executing the warrant and determining the items to be seized); <u>Connally v. Georgia</u>, 429 U.S. 245, 250 (1977) (state magistrate paid $5.00 for each warrant issued, but paid nothing for each warrant application refused); <u>Coolidge</u>, 403 U.S. at 449-50 (State Attorney General issued the warrant rather than a judicial official). Shehadeh presents no evidence to indicate that Judge Paisley had a

pecuniary interest in issuing the Warrant. Shehadeh also fails to show that Judge Paisley abandoned his independent judicial role when he issued the Warrant.

Shehadeh argues that Judge Paisley's recusals in several of Shehadeh's civil cases proves that Judge Paisley was not neutral and detached when he issued the Warrant. Judge Paisley's actions in unrelated cases do not show a lack of neutrality in this case. See e.g., United States v. Outler, 659 F.2d 1306, 1312-13 (5th Cir. 1981) (a magistrate's experience with a defendant in an unrelated case does not disqualify him from issuing a warrant). Recusals in other cases are dependent on the facts and circumstances of those cases. The only evidence of a reason for any of Judge Paisley's recusals is contained in the State Criminal Proceeding Docket Sheet. Judge Paisley recused in that case because Shehadeh engaged in repeated improper ex parte communications with the Court. A recusal on these grounds does not show any bias or abandonment of judicial neutrality.

Furthermore, the recusals in other cases indicate that Judge Paisley took his role as a neutral and detached magistrate seriously. He recused in cases involving Shehadeh when the particular facts and circumstances of the case warranted recusal. The fact that he did not recuse when Nation

presented the Complaint and Affidavit, if anything, indicates that Judge Paisley determined that he could hear the matter as a neutral and detached magistrate. The recusals in the other cases do not show that Judge Paisley abandoned his judicial role in this case.

Shehadeh also argues that Judge Paisley was not neutral because he was a former prosecutor who knew of Shehadeh's history of threatening judges and public officials and suing public officials. Shehadeh also speculates that Judge Paisley "might have believed that Defendant had previously threatened to injure Judge Paisley and/or his family." Motion 30, at 4. Shehadeh presents no evidence to support this speculation. Even so, judges regularly maintain their integrity in the face of such threats and lawsuits. See United States v. Taylor, 417 F.3d 649, 652 (7th Cir. 2005) (The fact that a defendant threatened or sued a judge does not require recusal.).[2] Such threats and lawsuits do not demonstrate a lack of judicial neutrality.

Moreover, judges in smaller communities often have had past experiences with individuals who come before them, particularly convicted

---

[2] The appearance of a lack of neutrality may have existed if Shehadeh made an actual threat against Judge Paisley and took steps to harm him. See In re Nettles, 394 F.3d 1001, 1002-03 (7th Cir. 2005) (The accused threatened to bomb a federal courthouse and attempted to purchase materials to make the bomb); see also State v. Burnam, 672 P.2d 1366, (Or. App. 1983) (Judge issued the warrant to search the residence where the Defendant raped the judge's clerk the day before). Shehadeh presents no evidence that he threatened Judge Paisley or his family or took any steps to harm any of them.

felons such as Shehadeh.  The fact that a judge had prior information about a member of the community does not indicate that the judge failed to act as a neutral and detached magistrate.  See United States v. Heffington, 952 F.2d 275, 279 (9th Cir. 1991) ("Assuming that an appearance of partiality may lurk in the fact that judges and police officers in rural counties often know more about the local criminal recidivists . . . than their more urban colleagues, we are not prepared to disqualify small-town judges on demand.").[3]

Judge Paisley had prior experience with Shehadeh's civil suits, and he may have been aware of Shehadeh's past threatening behavior, but none of those circumstances supports the inference that Judge Paisley abandoned his role as a neutral and detached magistrate when he issued the Warrant.  The Court should deny Shehadeh's Motion to Suppress based on his claims that Judge Paisley was not a neutral and detached magistrate.

Shehadeh also argues that the Warrant violated his rights under the Fourth Amendment because Nation intentionally made false statements in

---

[3] The Court takes judicial notice that in 2014, Christian County, Illinois, had an estimated population of 33,892 and the county seat, Taylorville, Illinois, had an estimated population of 10,971.  United States Census Bureau, QuickFacts, located at http://factfinder.census.gov, visited on February 19, 2016. Courts may take judicial notice of publically available information in rendering decisions.  See e.g., Belleville Catering Co. v. Champaign Market Place, LLC, 350 F.3d 691, 693 (7th Cir. 2003) ("Counsel could have done what the court did: use the Internet.").

the Affidavit.  Although a warrant is presumptively valid, Shehadeh may secure a hearing to challenge the veracity of the Affidavit if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-156 (1978).

In cases based on an alleged omission of fact from the Affidavit, Shehadeh must present direct evidence that Nation intentionally or recklessly omitted the information from the Affidavit.  See United States v. Glover, 755 F.3d 811, 820 (7th Cir. 2014).  Shehadeh must present "direct evidence of [Nation's] state of mind or inferential evidence that [Nation] had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." United States v. Souffront, 338 F.3d 809, 822 (7th Cir. 2008) (quoting United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1990).

Shehadeh also must show that the "allegedly false statement is necessary to the finding of probable cause." Id.  Shehadeh is not entitled to a hearing if he fails to make such a showing, "If sufficient allegations existed warranting the search irrespective of the affiant's alleged errors, a

hearing is unnecessary and the motion should be denied." United States v. Mullins, 803 F.3d 858, 862 (7th Cir. 2015).

Shehadeh argues that the Affidavit was false because: (1) Nation omitted that he received information from a CS through Brown; and (2) Nation falsely stated that Crime Stoppers received two tips when the Crime Stoppers records show only one call about drug activity at the Residence.

These allegedly false statements and omissions were not necessary to the finding of probable cause. The Affidavit contains other sufficient information to support a finding of probable cause. Nation states that he had experience investigating felony offenses and worked for fourteen months as an Inspector with the Illinois State Police CIEG drug task force. Nation states that Shehadeh lived at the Residence. Nation states that on February 28, 2014, shortly before he presented the Complaint and Affidavit to Judge Paisley, he personally stood downwind from the Residence on adjoining property and smelled odors from methamphetamine production. Finally, Nation checked the Nplex records and confirmed that Shehadeh purchased the precursor drug pseudoephedrine within the last month. This information is sufficient to establish probable cause to support the Warrant without consideration of the references in the Affidavit to the Crime Stoppers tips or the information that Brown provided from the CS. See

United States v. Sweeney, 688 F.2d 1131, 1135-36 (7th Cir. 1982) (an experienced officer's detection of an odor associated with methamphetamine production and corroborated by other factual evidence supported a finding of probable cause).

Shehadeh cites United States v. Glover, 755 F.3d 811, 820 (7th Cir. 2014), for the proposition that Nation's omission of any reference to Brown's CS warrants a Franks hearing. The Court disagrees. In Glover, the officer omitted references to an informant from a warrant affidavit when the officer knew significant adverse information about the informant's credibility. Glover, 755 F.3d at 820-21. Shehadeh presents no evidence that Nation had such reasons to omit information about the CS. Brown's report gives no indication that he told Nation the identity of the CS or provided any background information about the CS. The omission of the CS from the Affidavit is not sufficient in this case to warrant a Franks hearing. Even if Nation had some adverse information about the CS, the Franks hearing would still not be warranted in this case because the alleged wrongful omissions from the Affidavit were not necessary to the finding of probable cause.

Shehadeh also presents no direct evidence of Nation's state of mind when he omitted this information from the Affidavit. Shehadeh submits the

Letter as evidence that Nation "had a history of conflict with Shehadeh." Motion 30, at 5. The Letter shows no animosity toward Shehadeh. Nation accepted Shehadeh's apology and stated that he held no grudges.[4] The Letter fails to show that Nation had any malice or ill will toward Shehadeh. Shehadeh has presented no other evidence to attempt to show directly Nation's state of mind when he executed the Affidavit.

Finally, the alleged misrepresentation regarding the number of calls to Crime Stoppers is not material. Nation stated in the Affidavit that two calls were made to Crime Stoppers, but the records show only one call. This error is trivial. An unimportant misstatement does not trigger a hearing even if made intentionally. See United States v. Maro, 272 F.3d 817, 821 (7th Cir. 2001).

Shehadeh has failed to make the substantial showing necessary to be entitled to a Franks hearing to challenge the veracity of the Affidavit. Shehadeh's Motion to Suppress should be denied.

THEREFORE THIS COURT RECOMMENDS that the Motion to Suppress set forth in Defendant Jamal Shehadeh's Motion to Dismiss or, in the Alternative, Motion to Suppress (d/e 30) be DENIED.

The parties are advised that any objection to this Report and

---

[4] The reprimand for using the Crime Stoppers letterhead in 2003 raised by Shehadeh is totally irrelevant.

Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); 28 U.S.C. § 636(b)(1).

ENTER: February 19, 2016

                                              *s/ Tom Schanzle-Haskins*
                                      UNITED STATES MAGISTRATE JUDGE